# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RUSSELL W. BEAVER, )
)
        Plaintiff, )
v. ) Case No. CIV-15-277-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Russell W. Beaver requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("SSA") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 13, 1961, and was fifty-three years old at the most recent administrative hearing (Tr. 253, 261). He completed ninth grade, and has worked as a firefighter, material handler, truss assembler, and landscaper/groundskeeper (Tr. 98). The claimant alleges that he has been unable to work since an amended onset date of October 15, 2011, due to blindness in his right eye and problems with his left eye, left knee, and literacy (Tr. 48, 302).

**Procedural History**

On December 22, 2011, the claimant filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 231-41). His applications were denied. ALJ Deborah Rose held an administrative hearing and determined the claimant was not disabled in a written decision dated May 23, 2013 (Tr. 112-24). The Appeals Council remanded the case to the ALJ on June 5, 2014 (Tr. 142-43). ALJ Deborah Rose conducted a second administrative hearing and determined the claimant was not disabled in a written decision dated December 18, 2014 (Tr. 21-37). The Appeals Council denied review, so the ALJ's December 2014 written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant retained the residual functional capacity ("RFC") to perform a limited range of light work, *i. e.,* he could lift/carry and push/pull twenty pounds occasionally and ten pounds frequently; could sit/stand/walk for six hours total during an eight-hour workday; could occasionally climb, balance, kneel, crouch, crawl, stoop, and reach overhead with his dominant right upper extremity; and needed to avoid environments where he would be exposed to hazards or jobs where lack of depth perception would expose him to hazards (Tr. 26). The ALJ further found the claimant was limited to simple tasks with only superficial and incidental work-related interaction with coworkers, supervisors, and the public (Tr. 26). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the regional and national economies, *e. g.*, marking clerk, cleaner/housekeeper, and copy machine operator (Tr. 36).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) evaluate the opinions of his treating physicians, Dr. Myers and Dr. McAlister; (ii) analyze his credibility; (iii) evaluate the other source evidence, specifically a Third Party Function Report submitted by his brother-in-law, and observations made by an SSA employee; (iv) apply the Medical-Vocational Guidelines (the "Grids") to find him disabled, and (v) perform a step five determination. The Court finds these arguments unpersuasive.

The ALJ determined that the claimant had the severe impairments of left knee deformity from electrocution as a youth, blindness in the right eye since childhood, diabetes mellitus, right rotator cuff tear as of January 16, 2013, depression, borderline intellectual functioning, and polysubstance abuse (Tr. 24). The medical evidence reveals that the claimant presented to the W.W. Hastings Hospital Emergency Room for left knee pain on October 18, 2011, November 27, 2011, and December 28, 2011 (Tr. 439-43, 450-55, 461-66). An x-ray dated October 18, 2011, revealed a presumed posttraumatic deformity of the medial aspect of the tibia, rule out joint effusion (Tr. 478).

The claimant established care with orthopedic surgeon Dr. Deborah McAlister on January 1, 2012 (Tr. 468). She noted the claimant had a skin graft on his left knee that was "stuck to the bone." (Tr. 468). Dr. McAlister administered a steroid injection, which the claimant later reported effectively controlled his pain (Tr. 468, 507). At a follow-up appointment on September 11, 2012, the claimant declined a second steroid injection, and Dr. McAlister noted he left his last scheduled appointment prior to being seen (Tr. 591). She thus concluded that the claimant "clearly is not hurting as much as he would like to be," and could work at a job that was not physically demanding (Tr. 591, 618). Additionally, Dr. McAlister prepared a Medical Source Statement ("MSS") on February 26, 2014, wherein she opined that the claimant could tolerate both light and moderate work (Tr. 671).

On February 9, 2012, the claimant established care with Dr. Lana Myers (Tr. 515-20). Dr. Myers assessed the claimant with, *inter alia*, type two diabetes, dyslipidemia, gastroesophageal reflux disease, and depression, and prescribed a number of medications

(Tr. 517, 519). At a follow-up appointment on September 6, 2012, Dr. Myers noted, *inter alia*, that the claimant missed all of his appointments for managing his chronic conditions since February 2012 (Tr. 592). In an addendum to the treatment notes that day, Dr. Myers indicated she filled out paperwork stating the claimant could work at a light duty job (Tr. 598). The claimant requested that the paperwork be changed to reflect he was incapable of working, but Dr. Myers declined to make such change (Tr. 598).

Dr. Ronald Schatzman conducted a physical consultative examination of the claimant on February 7, 20112 (Tr. 490-97). Dr. Schatzman noted the claimant's knees were stable in all range of motion exercises, but there was reduced range of motion in his left knee (Tr. 492).

The claimant underwent a mental status examination by Denise LaGrand, Psy.D. on February 13, 2012 (Tr. 498-502). During this appointment, Dr. LaGrand administered the Wechsler Adult Intelligence Scale-IV, the results of which indicated that the claimant had a verbal comprehension index of 66, perceptual reasoning index of 90, working memory index of 83, processing speed index of 84, and a full scale IQ of 76, placing him in the borderline intellectual functioning range (Tr. 501).

State reviewing psychologist R. Robinowitz, Ph.D. reviewed the claimant's record on March 29, 2012 (Tr. 528-45). He concluded on the Mental RFC Assessment, that the claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation (Tr. 530).

State reviewing physician Dr. Donald Baldwin reviewed the claimant's record on April 11, 2012, and found that he could perform medium work with frequent stooping,

but only occasional climbing ramps/stairs/ladders/ropes/scaffolds, balancing, kneeling, crouching, and crawling (Tr. 546-553). Dr. Baldwin also found the claimant needed to avoid all hazards due to his right eye blindness (Tr. 549-50, 553).

The claimant's brother-in-law completed a Third Party Function Report on January 1, 2012 (Tr. 308-15). He indicated the claimant could walk approximately 100 yards before needing a thirty minute break, lift approximately thirty pounds, and could not squat (Tr. 313). He reported that the claimant does not read well and is "semi-illiterate," but could follow spoken instructions (Tr. 313).

On July 30, 2014, the claimant underwent surgery to his left knee, which included a left leg medial gastrocnemius flap, and a split-thickness skin graft to the left medial gastrocnemius flap (Tr. 674-76). At a follow-up appointment on August 14, 2014, Dr. Scott Newbrough noted that the claimant's skin graft had nearly taken 100%, there was no sign of infection, and his donor site was healing as expected (Tr. 678, 680).

At the most recent administrative hearing, the claimant testified that he is unable to work because of problems with his left knee, right eye, and back pain (Tr. 80). He testified that his knee swells, and he experiences throbbing or sharp pain in his knee five to six days per week, but the pain and swelling is completely relieved by elevating his leg (Tr. 87). The claimant stated he is blind in his right eye, and sees a "black dot" in the field of vision in his left eye (Tr. 82). As to specific limitations, the claimant indicated he could stand for fifteen minutes, walk for twenty minutes, sit for thirty minutes, lift/carry ten pounds, but could never squat (Tr. 88-89, 92, 95). He also stated it was difficult for him to communicate in English, but declined a Cherokee translator (Tr. 83). He further

indicated he cannot read well, and needs assistance filling out paperwork, but could read a newspaper except for the "high words." (Tr. 96).

In his written opinion, the ALJ extensively summarized the claimant's hearing testimony, the medical evidence contained in the record, and a Third Party Function Report submitted by the claimant's brother-in-law. For his credibility analysis, the ALJ found the claimant not credible due to a number of factors, but "slightly more credible" when he stopped drinking and using drugs (Tr. 27-28). As to the opinion evidence, the ALJ gave great weight to the opinions of the consultative examiners, Dr. Schatzman and Dr. LaGrand (Tr. 30, 34). The ALJ also gave great weight to Dr. Myers' opinion as to medical findings, but noted her opinion on the claimant's ability to work was an issue reserved to the Commissioner (Tr. 31). Additionally, the ALJ gave some weight to Dr. McAlister's September 2012 opinion that the claimant could work if the job was not physically demanding, and to her February 2014 opinion that the claimant could tolerate light or moderate work (Tr. 31, 33).

The claimant first argues that the ALJ erred in evaluating the medical source opinion evidence from his treating physicians, Dr. Myers and Dr. McAlister. Specifically, he argues that the two treating physician opinions were similar as to the claimant's ability to work, and therefore, it was error for the ALJ to assign them different weights. As indicated above, the ALJ gave great weight to Dr. Myers' opinion on *medical findings,* but did not assign her opinion on the claimant's ability to work any specific weight (Tr. 31). In assigning some weight to Dr. McAlister's opinions concerning the claimant's ability to work, the ALJ noted that they lacked clarity and

-8-

concerned issues reserved to the Commissioner, but nonetheless found that her February 2014 opinion was consistent with other treating sources, including Dr. Newbrough (Tr. 33). Dr. Myers' and Dr. McAlister's opinions on the claimant's ability to work are not medical opinions, but rather opinions on a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Although such medical source opinions must not be ignored, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Soc. Sec. Rul. 96–5p, 1996 WL 374183, at *2 (July 2, 1996). The ALJ carefully considered Dr. Myers' and Dr. McAlister's opinions regarding the claimant's ability to work at step four, and thus there is no error (Tr. 29, 31, 33). Moreover, their opinions are unfavorable to the claimant because they both opined that the claimant was *not* precluded from working. Accordingly, any error in weighing their opinions would be harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (no reversible error in weighing a medical source opinion which said that the claimant had "no limitation" or "no significant limitation" in every category relevant to work function "because giving greater weight to [the doctor's] opinion would not have helped her").

Second, the claimant argues that the ALJ erred by failing to properly assess his credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ summarized the claimant's testimony and determined that he was not a particularly credible witness, but was slightly more credible when he stopped drinking and using drugs (Tr. 27-28). In reaching this conclusion, the ALJ discussed numerous reasons for disbelieving the full extent of the claimant's allegations of disabling limitations, including: (i) a poor work history; (ii) continued drug abuse, drug seeking behavior, and criminal charges related to drug use; (iii) inconsistencies in his testimony; (iv) inconsistencies between his testimony and the medical record; (iv) an injury he sustained while carrying wood; (v) effectiveness of steroid injection treatment; (vi) lack of objective evidence of back or neck pain; (vii) failure to follow prescribed treatment; (viii) Dr. Schatzman's essentially normal examination findings; (ix) receipt of unemployment benefits; and (x) his daily activities (Tr. 27-29, 34). Thus, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's third argument is that the ALJ did not properly evaluate the other source evidence, specifically the Third Party Function Report submitted by his brother-in-law, and observations made by an SSA employee who conducted a face-to-face interview with him. Social Security Ruling 06-03p provides the standards for evaluation of third party evidence such as that provided by the claimant's brother-in-law. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). However, specific written findings about each lay witness's credibility are not necessarily required, particularly where the ALJ's written decision reflects that he considered the evidence. *See Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996). Here, the ALJ specifically referenced the Third Party Function Report at steps three and four, and thus it is clear that he considered it (Tr. 25, 29). Similarly, the ALJ did not mention the notation an SSA employee made on his Field Disability Report indicating that the claimant had difficulty understanding the questions and looked to his brother-in-law for help (Tr. 297-300). A specific credibility determination is also not required for lay witness statements that are largely cumulative of other evidence that was discussed. *See Brescia v. Astrue,* 287 F. Appx. 626, 630 (10th Cir. 2008). Here, the employee's observations are cumulative of the claimant's own testimony and written statements, which the ALJ properly found not entirely credible. Moreover, the Tenth Circuit has declined to remand for an error in the ALJ's

credibility determination where "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." *Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004). The ALJ provided numerous reasons, supported by the record, to discount the credibility of the claimant's alleged symptoms. Therefore, the Court finds any error in the credibility findings as to the claimant's brother-in-law, or the SSA employee is harmless and does not require remand.

The claimant next argues that the ALJ erred by failing to find him disabled according to Rule 202.09 of the Grids. Rule 202.09 requires a finding of disability for claimants who: (i) are limited to light work, (ii) are approaching advanced age, (iii) are illiterate or unable to communicate in English, and (iv) have unskilled or no past work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.09. The third and fourth requirements are at issue in this case. Based on the claimant's completion of ninth grade, the ALJ found he had a limited education (Tr. 35). Although a ninth grade level of formal education is generally classified as a limited education, such classification can be modified where there is evidence that the claimant's actual educational abilities contradict the completed grade level. *See* 20 C.F.R. §§ 404.1564(b), 416.964(b). The claimant argues that he is illiterate, and should not be credited as having a limited education. For purposes of applying the Grids, illiteracy "means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). In support of his illiteracy claim, the claimant

references the fact that his brother-in-law assisted him with completing his application and consultative examination paperwork, his own testimony, Dr. Schatzman's "illiterate" diagnosis, his brother-in-law's Third Party Function Report, and subjective statements he made to Dr. LaGrand. However, the claimant fails to acknowledge that the evidence he refers to is his own testimony, is based on his subjective statements, or is cumulative of other evidence the ALJ discussed, all of which the ALJ properly discredited. Furthermore, the record is replete with evidence showing that, although the claimant may have difficulty reading, he is not illiterate: (i) the claimant completed his own Function Report in December 2011; (ii) he reported on his initial Disability Report that he could read and write English (just not very well), and could write more than his name; (iii) he testified he could read a grocery list and a newspaper except for "high words;" (iv) his attorney testified he could read and write "a little bit;" (v) his brother-in-law stated he was "semi-illiterate;" and (vi) he was able to complete the intelligence testing administered by Dr. LaGrand (Tr. 68, 75, 96, 296, 313, 501-02). The Court therefore finds that it was not error for the ALJ to determine that the claimant had a limited education, and thus was not illiterate.

Additionally, Rule 202.09 requires that the claimant either have no past relevant work or that any past work be classified as unskilled. Based on testimony from the vocational expert ("VE"), the ALJ found the claimant's past work as a material handler (DICOT 929.687-030) and truss assembler (DICOT 762.684-062) had a specific vocational preparation level ("SVP") of three, which corresponds to semi-skilled work. *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("Using the skill level

definitions in 20 CFR 404.1568 and 416.968, . . . semi-skilled work corresponds to an SVP of 3-4 . . . in the DOT."). Accordingly, application of Rule 202.09 is inappropriate in this case, and the ALJ did not err by failing to find the claimant disabled through application of the Grids.

The claimant's two remaining arguments both relate to the ALJ's findings at step five. He argues that there is no affirmative evidence in the record demonstrating that he can read at the level required by the three alternative jobs identified by the ALJ. The Language Development Level ("LDL") for each of the alternative jobs is one, which includes the following reading skills: (i) recognizing the meaning of 2,500 two or three-syllable words, (ii) reading at a rate of 95-120 words per minute, and (iii) comparing similarities and difference between words and between series of numbers. *See* DICOT, App. C, Sec. III (4th ed., revised 1991), 1991 WL 688702. An LDL of one is the lowest level. *Id.* Notably, the claimant's past relevant work as a truss assembler (DICOT 762.684-062) and groundskeeper/landscaper (DICOT 406.687-010) each have an LDL of two, and the ALJ found the claimant could not perform his past relevant work because the *exertional level* was too high, not because the LDL was too high. Furthermore, the ALJ specifically asked the VE if a person with the same education and work experience as the claimant could perform such work. Most importantly, though, the claimant disregards that he has the burden to provide evidence of his functional limitations. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004). The Commissioner's burden at step five is to prove that there are jobs in the economy the claimant can perform given the limitations proven at steps one through four, *see Haddock v. Apfel,* 196 F.3d 1084, 1088

(10th Cir. 1999), it is not to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered. *See Howard*, 379 F.3d at 948 [citation omitted].

Lastly, the claimant argues that the ALJ erred at step five because he omitted the VE's testimony, made in response to questions posed by his attorney, that the use of a cane up to two-thirds of the day would eliminate all of the jobs she testified the claimant could do given the limitations the ALJ ultimately adopted as his RFC. However, the ALJ properly rejected the claimant's assertion that he required a cane to walk by explaining how it was inconsistent with the record, and did not include such limitation in his RFC determination. A properly phrased hypothetical question is one that "include[s] all—and only—those impairments borne out by the evidentiary record." *Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir. 1995). Thus, an ALJ is "not required to accept the answer to a hypothetical question that include[s] limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." *Id.*

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**